UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE PACE,

                        Petitioner,
     v.                                               9:22-CV-0742
                                                          (GTS)
MILLER,

                        Respondent.
_____

APPEARANCES:                                          OF COUNSEL:

WILLIE PACE
Petitioner, pro se
19-A-2122
Wallkill Correctional Facility
Box G
Wallkill, NY 12589

HON. LETITIA JAMES                           DANIEL P. HUGHES, ESQ.
Attorney for Respondents                       Ass't Attorney General
Attorney General of New York
28 Liberty Street
New York, NY 10005

GLENN T. SUDDABY
United States District Judge

**DECISION and ORDER**

I.    INTRODUCTION

    Petitioner pro se Wille Pace seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").   Respondent opposed the petition.  Dkt.

No. 18, Answer; Dkt. No. 18-1, Response Memorandum ("Resp."); Dkt. No. 18-2–18-3, Supporting Exhibits.  Petitioner did not reply.[1]

For the reasons below, the petition is denied and dismissed.

## II. RELEVANT BACKGROUND

### A. Arrest

On October 15, 2018, the Kingston Police Department ("KPD") responded to an "alleged harassment" involving a woman, Shakira Green, and petitioner.  Dkt. No. 18-3 at 26-27.  Upon arriving on the scene, police interviewed Ms. Green who reported arguing with petitioner multiple times earlier in the day.  *Id.* at 27-28.  Green stated that petitioner, the father of her child, was unhappy with custody arrangements and threatened to "boom her[,]" or shoot her.  *Id.* at 28.  During the arguments, petitioner also pantomimed firing a gun in Green's direction and reached for the waistband of his pants, indicating he had a gun.  *Id.* at 28-29.  Ms. Green then signed a complaint against petitioner.  *Id.* at 31-32.

Later, on the same day, while patrolling Officer Michael Pederson of the KPD was advised petitioner's car was spotted near his location.  Dkt. No. 18-3 at 46-47.  Officer Pederson, already aware of the complaint against petitioner and "familiar with" petitioner based on "prior police interaction[,]" headed to petitioner's alleged location to monitor the situation.  *Id.* at 44-46.  After arriving at the scene, Officer Pederson, along with another officer in the area, found petitioner in a driveway next to his vehicle talking to three individuals.  *Id.* at 47.  Eventually, petitioner boarded his vehicle and began to drive away.  *Id.* at 49.  Knowing petitioner did not have a valid drivers' license, Officer

---

[1] For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Pederson stopped petitioner's car, and, upon approaching the vehicle, "immediately smell[ed] a strong odor of marijuana." *Id.* at 49, 54-55.  Upon questioning, petitioner admitted to smoking marijuana but stated that he threw the remaining marijuana out of the car once he saw police approaching.  *Id.* at 56.  At that time, Officer Pederson arrested petitioner in connection with the signed complaint, and other members of the KPD transported petitioner to the police station.  *Id.* at 56-57.  Because of the strong smell of marijuana, Officer Pederson then searched the car.  *Id.* at 56-57.  Officer Pederson discovered a T-shirt under a seat which, upon closer examination, held an unregistered revolver.  *Id.* at 56-57.

On December 17, 2018, an Ulster County grand jury returned a one-count indictment charging petitioner with Criminal Possession of a Weapon in the Second Degree.  Dkt. No. 18-2 at 13.

**B.  Pre-Trial Hearing**

Petitioner filed a pre-trial motion in the Supreme Court, Ulster County seeking to suppress the gun seized from petitioner's car.  Dkt. No. 18-3 at 83.  Petitioner argued that the discovery of the gun was the product of an illegal search because: (1) one of the officers at the scene was unsure as to whether the marijuana odor came from petitioner or the vehicle; and (2) the officers knew or should have known that the heavy object inside the T-shirt was not marijuana, making it unreasonable to have unwrapped and "searched" the T-shirt.  *Id.* at 84.

After a hearing, the trial court published a written decision on May 17, 2019, denying petitioner's motion.  Dkt. No. 18-3 at 83-85.  First, the trial court noted that, not only was there a smell of marijuana, but that petitioner admitted to having marijuana in

the car.  Dkt. No. 18-3 at 84.  The trial court thus rejected petitioner's first argument, and concluded that the smell, coupled with petitioner's admission, made the search proper and "reasonably related in scope to police observations[.]"  *Id.* at 84.  The trial court also rejected petitioner's second contention, noting that "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *Id.* at 85 (internal citation omitted).

### C.  Plea Agreement

Following the trial court's decision, petitioner accepted a plea deal in May 2019 and pled guilty to one count of Criminal Possession of a Weapon in the Second Degree.  Dkt. No. 18-2 at 72-98.  In exchange for petitioner's guilty plea, the judge stated he planned to sentence petitioner to a 10-year term of imprisonment with 5 years of post-release supervision and the prosecution agreed to drop three unrelated drug charges pending against petitioner in Kingston City Court.  *Id.* at 73-74, 79.  Petitioner confirmed that he understood the terms of the plea offer, *id.* at 81, confirmed that the plea offer, as recited, constituted the entirety of the promises that the prosecutors and court made to him, *id.* at 90, and that no one pressured him into accepting the plea offer, *id.*  Additionally, petitioner swore he had no mental condition nor had consumed any alcohol or drugs prior to the hearing that could affect his understanding of the plea offer.  *Id.* at 81.  Petitioner stated that he understood that, by accepting the plea agreement, he forfeited his rights to remain silent, to a jury trial, to a presumption of innocence, and to call and confront witnesses.  *Id.* at 82-83.  Petitioner also confirmed he understood that

he voluntarily waived his right to appeal. *Id.* at 89-91. Based on petitioner's affirmations, the Court accepted petitioner's guilty plea. *Id.* at 93.

On the same day, the trial court, in accordance with the plea agreement, sentenced petitioner to a 10-year term of imprisonment with 5 years of supervised release. Dkt. No. 18-2 at 94-98.

### D. Direct Appeal

Despite waving his right to an appeal in connection with his plea deal, petitioner appealed his conviction to the New York Appellate Division, Third Department ("Third Department"). Dkt. No. 18-2 at 1-10. Petitioner argued *inter alia* that his guilty plea was not knowing and intelligent due to his defense counsel's failure to: (1) object when the trial judge gave petitioner inaccurate information regarding the appellate waiver; (2) ensure that petitioner "understood the meaning of terms used by [the trial judge]"; (3) ensure that petitioner understood that he retained "certain appellate arguments" despite the appellate waiver. *Id.* at 3.

The Third Department denied petitioner's appeal. Dkt. No. 18-2 at 103-06. The Third Department first noted that "[t]o the extent that [petitioner is challenging] the validity of his waiver of the right to appeal, we find any such challenge to be unpersuasive." *Id.* at 104. The Third Department reasoned that the trial court's "explanation of the waiver arguably could have been more expansive[,]" but "the record reflects that [petitioner] was aware [of the] appeal waiver" and that petitioner had an opportunity to discuss the waiver with his defense counsel and "understood the nature of the appeal waiver[.]" *Id.*

The Third Department then found petitioner's claim of ineffective assistance of counsel meritless. Dkt. No. 18-2 at 104-105. The court stated that, as the appellate waiver was valid, defense counsel could not "be faulted for failing to correct or challenge the adequacy of the [trial court's] colloquy [on the waiver.]" *Id.* at 105. The Third Department also noted that "given the favorable plea agreement, which included the dismissal of other pending charges . . ., [the court] find[s] that [petitioner] received meaningful representation. *Id.* at 105.

Petitioner filed for leave to appeal to the New York State Court of Appeals. Dkt. No. 18-2 at 107-114. On July 8, 2021, the Court of Appeals denied petitioner leave to appeal. *Id.* at 117.

Petitioner subsequently filed the instant petition on April 20, 2022. Pet. at 1.

### III.  PETITION

Petitioner challenges his 2019 judgment of conviction entered by guilty plea in the Supreme Court, Ulster County. Pet. at 1-14. Petitioner argues he is entitled to federal habeas corpus relief because: (1) police conducted an improper warrantless search of his vehicle, *id.* at 5-6; (2) trial counsel was ineffective for failing to call petitioner to testify at his grand jury, *id.* at 6-8; and (3) the stop of his vehicle was pretextual, *id.* at 9-11.[2] Petitioner seeks a reduced sentence to the 7-year minimum. Pet. at 14.

### IV.  DISCUSSION[3]

---

[2] Petitioner had a fourth claim, concerning DNA evidence on the revolver, that he voluntarily withdrew as the claim was unexhausted in state court. *See* Dkt. No. 7 at 1.

[3] Respondent argues that all three claims are unexhausted and that Claims 1 and 3 are procedurally barred. Resp. at 13-16, 19-20. While the Court is inclined to agree, the petition is plainly meritless, and, as such, the Court exercises its power under 28 U.S.C. § 2254(b)(2) to deny the petition on the merits for the reasons discussed below.

### A. Claim 1: Warrantless Search

Petitioner's Claims 1 and 3 challenge the legality of KPD's warrantless search of his vehicle under the Fourth Amendment. Pet. at 5-6, 9-11. Both claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976). Further, following petitioner's guilty plea and appellate waiver, *Tollett v. Henderson*, 411 U.S. 258 (1973), foreclosed federal review of petitioner's Fourth Amendment claims.

#### i. *Stone v. Powell*

In *Stone v. Powell*, the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, . . . a state prisoner [is not entitled to] federal habeas corpus relief on the ground that evidence [was] obtained in an unconstitutional search and seizure[.]" 428 U.S. at 482. Building on *Stone*, the Second Circuit has held that habeas review of Fourth Amendment search and seizure issues may only proceed if: "(a) [] the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) [] the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).

Petitioner's Fourth Amendment claims are barred by *Stone* unless petitioner can demonstrate that he did not receive a full and fair opportunity to litigate his Fourth Amendment claim under either prong of the *Capellan* test. *Capellan*, 975 F.2d at 70.

Petitioner does not contend that New York courts failed to provide him with corrective procedures under the first prong of the *Capellan* test. Even if petitioner did

make such an argument, numerous federal courts have recognized that New York's corrective procedures, of which petitioner availed himself, *see* Dkt. No. 18-3 at 1-82, are facially adequate for adjudicating suppression claims. *Capellan*, 975 F.2d at 70 n.1 ("Indeed, [] federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [N.Y. C.P.L.] § 710.10 *et seq.*") (internal quotation marks omitted); *Bradley v. LaClair*, 599 F. Supp. 2d 395, 409 (W.D.N.Y. 2009) (finding that New York's "procedure for litigating Fourth Amendment claims" has been found "by the federal courts in this Circuit to be facially adequate") (internal quotation marks omitted). The Court finds no reason to break with Second Circuit precedent. Thus, petitioner cannot avoid *Stone*'s Fourth Amendment bar based on Capellan's first prong.

Petitioner also does not contend, nor does the record reflect, that there was an unconscionable breakdown in the state's corrective procedures. In fact, petitioner received a suppress hearing, at which he was represented by counsel and argued before a neutral judge that the warrantless search of his vehicle violated the Fourth Amendment. *See* Dkt. No. 18-3 at 1-83. What the Court sees is a situation where petitioner thinks that the trial court rendered an erroneous decision during an otherwise uneventful criminal proceeding. However, a "mere disagreement" with a state court's Fourth Amendment decision "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72.

  **ii.** ***Tollett v. Henderson***

Under *Tollett*, "[w]hen a criminal defendant has [pled guilty] . . ., he may not thereafter raise independent [federal habeas] claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 267;

*United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975); *Persaud v. Kirkpatrick*, No. 15-CV-5645, 2019 WL 2743588, at *8 (E.D.N.Y. July 1, 2019) (noting that the Supreme Court "recognized an exception to the *Tollett* rule" where federal courts could review habeas claims arising out state pre-plea suppression rulings "when a state provides for appellate review of those issues after a guilty plea.").

New York law "specifically permits a defendant to appeal suppression claims after pleading guilty." *Persaud*, 2019 WL 2743588, at *8; N.Y. C.P.L. § 710.70(2). Thus, under *Lefkowitz*, a New York prisoner retains their right to challenge pre-plea suppression decisions via a federal habeas petition. However, when a "defendant execute[s] a valid waiver of appeal[,]" New York law precludes the appeal of suppression claims. *Persaud*, 2019 WL 2743588, at *8 (citing *People v. Kemp*, 94 N.Y.2d 831 833 (1999)). Consequently, once a New York defendant executes a valid waiver of appeal, the defendant forfeits their right under *Lefkowitz* to collaterally attack pre-plea suppression decisions via a federal habeas petition. *Id.*; *Pena v. Graham*, No. 08-CV-3828, 2009 WL 5173819, at *13-14 (S.D.N.Y. Dec. 30, 2009).

Here, petitioner knowingly and voluntarily[4] waived his right to appeal, and, therefore, waived his right to appeal the trial court's decision regarding the suppression claims. As petitioner had no right to appeal the suppression claims in state court, *Lefkowitz* does not now let petitioner challenge those suppression claims in federal court. Without *Lefkowitz*, petitioner cannot avoid *Tollett*'s ban, and, as such, petitioner's guilty plea prohibits him from seeking habeas relief on "claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267.

Accordingly, petitioner's Fourth Amendment claims are barred by *Stone* and *Tollett* and Claims 1 and 3 of the Petition are denied.

### B. Claim 2: Ineffective Assistance of Counsel

Petitioner's Claim 2 argues that his trial counsel was constitutionally ineffective for failing to call petitioner to testify at his grand jury. Pet. at 6-8. As petitioner pled guilty, federal review of petitioner's ineffective counsel claim is foreclosed by *Tollett*. Further, Claim 2 is meritless.

#### i. *Tollett v. Henderson*

As discussed above, under *Tollett*, a petitioner who has pled guilty may not pursue federal habeas relief for claims related to the "deprivation of constitutional rights that occurred prior to the entry of the guilty plea[,]" including ineffective assistance of counsel claims. 411 U.S. at 267.

---

[4] Petitioner does not challenge the knowing and voluntary nature of his plea nor does the Court find substantial evidence in the record that petitioner's plea was not knowing and voluntary.

Only ineffective assistance claims that bear on the voluntariness of a guilty plea can bypass the *Tollett* bar.[5]  *Gomez v. Miller*, No. 9:19-CV-1571 (TJM), 2021 WL 5446979, at *12 (N.D.N.Y. Nov. 22, 2021).  Such a voluntariness argument "is limited to [solely] attacking the voluntary and intelligent character of the guilty plea by showing that the advice [petitioner] received from counsel was not within acceptable standards." *Id.* (cleaned up).  "Consequently . . . all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea [are waived]."  *Canal v. Donelli*, No. 9:06-CV-1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept. 17, 2008); *Beckary v. Chappius*, No. 1:11-CV-0850, 2012 WL 3045691, at *10 (W.D.N.Y. July 25, 2012) ("[C]laims[ that] involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself[ are] waived by [p]etitioner's voluntary, knowing[,] and intelligent guilty plea.").

Here, petitioner claims that his trial counsel was ineffective for not allowing petitioner "to testify at [his] grand jury when [petitioner had] requested to [testify]."  Pet. at 6.  Petitioner's argument does not touch on the voluntariness of his guilty plea.  Accordingly*, Tollett* bars petitioner's ineffective assistance of counsel claim and Claim 2 is denied.

    **ii.   Plainly Meritless**

Even if *Tollett* did not bar petitioner's ineffective assistance of counsel claim, the claim is plainly meritless. To succeed on a claim of ineffective assistance of counsel, a

---

[5]  The *Lefkowitz* exception to the *Tollett* bar is only available for Sixth Amendment ineffective assistance of counsel claims that concern pre-plea constitutional issues because, under New York law, an ineffective assistance of counsel claim survives a guilty plea only to the extent the claimed ineffectiveness "infected" the plea process.  *People v. Abdulla*, 98 A.D.3d 1253, 1254 (4th Dept. 2012).  Here, petitioner's ineffective assistance of counsel claim concerns the counsel's actions at petitioner's grand jury and petitioner does not contend, nor can the Court imagine, that such actions "infected" his plea process.

petitioner must show that: "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

To satisfy the first *Strickland* prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Such errors include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (cleaned up). When reviewing an ineffective assistance claim, courts must be "highly deferential" and approach the analysis with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

The second *Strickland* prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts must look to the "cumulative weight of error" to determine whether any potential prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694. Petitioner must meet both "the performance prong [and] the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

To satisfy the first *Strickland* prong, petitioner claims that his trial counsel erred in not calling him to testify at the grand jury. Pet. at 6-8. "However, courts consistently have held that counsel's failure to ensure that a defendant testifies before a grand jury does not amount to ineffective assistance of counsel." *Chandler v. Moscicki*, 253 F. Supp. 2d 478, 491 (W.D.N.Y. 2003); (citing *Kohler v. Kelly*, 890 F. Supp. 207, 213 (W.D.N.Y. 1994) (listing cases)). This is especially true, where counsel possesses strong tactical reasons to not call a defendant to testify. Here, given that police recovered a gun in petitioner's car, it is unlikely he could have avoided indictment. As petitioner's testimony would not help avoid indictment, testifying at the grand jury had few advantages and numerous disadvantages, namely granting the prosecution an advantage in pretrial discovery and providing impeachment and cross examination material against petitioner at trial. Thus, the Court concludes that petitioner's trial counsel acted well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if petitioner could satisfy the first prong of *Strickland*, petitioner cannot demonstrate prejudice. Given the relatively low burden of proof[6] to obtain a grand jury indictment in New York and the overwhelming evidence against petitioner, it is highly unlikely that petitioner testifying before the grand jury would have prevented his indictment. Even if petitioner testified that the gun did not belong to him, the Court is not convinced that there is a "reasonable probability" that the grand jury would not have indicted considering the gun was found in his possession in his car in which petitioner

---

[6] New York grand juries may "indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense . . . and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense."  N.Y. C.P.L. § 190.65(1).

was driving alone. As such, the Court concludes that petitioner cannot prove counsel's actions harmed him. Petitioner's Claim 2 is therefore denied.

V.  CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(d); 2d Cir. R. 22.1.

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 29, 2024
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge